IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| GEORGIA STATE CONFERENCE OF THE NAACP, as an organization; GEORGIA COALTION FOR THE PEOPLES' AGENDA, as an organization; MERRITT HUBERT, TAURUS HUBERT, JOHNNY THORNTON, MARTEE FLOURNOY and LARRY WEBB; <br><br> Plaintiffs, <br><br> v. <br><br> HANCOCK COUNTY BOARD OF ELECTIONS AND REGISTRATION; KATHY RANSOM, NANCY STEPHENS, LINDA CLAYTON, ROBERT INGRAM, and JIM YOUMANS, in their official capacities as members of the Hancock County Board of Elections and Registration; and TIFFANY MEDLOCK, in her official capacity as the Hancock County Elections Supervisor, <br><br> Defendants. | CV 5:15-cv-414 CAR |

**DEFENDANTS' RESPONSE FOR PLAINTIFFS'
REQUEST FOR EMERGENCY STATUS CONFERENCE**

COMES NOW Defendants HANCOCK COUNTY BOARD OF ELECTIONS AND REGISTRATION, KATHY RANSOM, NANCY STEPHENS, LINDA CLAYTON, ROBERT INGRAM, and JIM YOUMANS, in their official capacities as members of the Hancock County Board of Elections and Registration; and TIFFANY MEDLOCK, in her official capacity as the Hancock County Elections Supervisor, by and through their undersigned counsel, and files this Response for Plaintiffs' Request for Emergency Status Conference and shows the Court as follows:

ARGUMENT

Defendants' are desirous but unable to fully respond to each and every allegation set forth in Plaintiffs' pleading due to the notice of request sent to Defendants at 6:32 p.m. on Tuesday, May 17th. Nonetheless, Defendants, by virtue of this response, shall attempt to address the most crucial fallacies and misinterpretations. Defendants are not forfeiting or conceding any rights to further respond in writing or defend allegations contained in Plaintiffs' motion. Further, failure to discuss or defend any matters contained therein is not meant to be construed as an admission of fact or liability.

Defendants do concur that further proceedings were suspended to provide the parties time to reach a mutually agreeable resolution of the case. Defendants had and still have every intention of pursuing a good faith continuation of such discussions. However, Defendants have been estopped due to baseless allegation of strange behavior and accusations of unlawful efforts to manipulate the May 24th election.

The Plaintiffs' motion is stockpiled with language such as "appears to be the case", "plaintiffs believe", "it appears" and "Defendants intend". These allegations mischaracterize the status of the negotiations, the absentee ballots process and advanced voting procedure. Plaintiffs disingenuously slanted the reasons for Defendants' failure to respond to the proposed Consent Order (purportedly written to disclaim any fault, actions or inactions of the Defendants). Actual phone conversations among counsel regarding specific aspects of the proposed order were omitted. Unfortunately, the linchpin of settlement requires financial expenditures on behalf of Defendants. Defendants do not possess or control any funds. The BOER is merely a line item on a rural county's limited budget. All expenditures must be approved and paid by the County. As a result, the BOER can negotiate semantics and procedures in a proposed consent order but the

BOER must have approval and input from the Board of Commissioners to finalize any agreement.

Item B.4.d. of the Standard of Conduct in the local rules for the Middle District state "[u[nless specifically permitted or invited by the court, letters between lawyers should not be sent to judges." However, throughout this proceeding, Plaintiffs have ignored such rule. When read in its entirety, the email from Andrea Grant, attorney for Defendants clearly explains the uncontrollable change in meeting dates due to a county wide event and her duly scheduled leave of absence. Neither of which can be construed to manipulate the upcoming vote.

Attached hereto and incorporated herewith is Exhibit 1, minutes of the meeting wherein the BOER voted to postpone its May 12th meeting for two reasons. First, to enable attendance at a county-wide, historical event and second, so the Board could certify election results. (See pages 1 and 2 of minutes.) Despite the discrimination accusations, the two African American members (Clayton and Ingram) voted in favor of postponement. The make up of the vote certainly offsets any contention of tampering with elections results or delay tactics.

Plaintiffs' motion is stunningly devoid of any facts, names of affected persons or source of information except for the letter sent to Ms. Lamar. Plaintiffs again ignored the above referenced rule of conduct and included an email circulated among counsel. However, the email does tell "the rest of the story" which Plaintiffs disregarded in its pleading. The alleged confusion did simply not occur and the lack of confusion is illustrated by Ms. Lamar subsequent choice to vote in person.

Plaintiffs attempt to select and present data to over embellish the facts. Foremost, as stated in the email of Andrea Grant, one of the attorneys for the Plaintiffs, over 50 applications for absentee ballots were incomplete, insufficient in some manner or no registration card was on

file to compare signatures against as required by law. Of the 50 plus problematic applications, more than 20 were properly returned so ballots could be forwarded to applicants. There is no proof or indication that all the remaining applications were returned due to lack of registration card. Importantly, the race of the applicants is unknown.

The reference to 3000 voters not having registration cards on file is irrelevant and not subject matter for this Court. Of course, a large percentage of the registration cards are likely to be of African American descent; however, it is no startling surprise as Hancock County is heavily populated with African Americans. Any voters (Caucasian or African American) can still vote in person or complete a registration card. It is unknown until the close of voting on May 24th whether or not the voters with outstanding applications shall return the corrected or completed applications via the postal system or vote in person. Hence, allegations of discrimination are unfounded.

Plaintiffs have failed to thoroughly investigate the claim that little or no effort has been made to replace registration cards. Plaintiffs' reliance on unidentified members of the African American community is simply not a substantive foundation for such a sweeping statement. Another blaring deficiency in the motion is Plaintiffs failure to point to specific law that Defendants have violated. Regardless, the uncontrollable destruction of registration cards affects both Caucasian and African American voters.

Attached hereto and incorporated herewith as Exhibits 1-6 are other illustrative letters sent to electors when absentee ballot application could not be processed. These show the overreaching conclusion Plaintiffs propound based on the review of one letter.

Plaintiffs attempt to solve non-existent problems is bluntly not viable under the law or physically possible by two staff members during among other things, advanced voting, training

of poll workers and preparation for an election less than a week away. The "off the cuff" suggestion to "readily use voters' signatures on the absentee ballot application as the replacement signature card for these voters" is an invitation for investigation by the State Election Board. In fact, a case has been investigated and is pending with the State Election Board for the prior staff, namely Aretha Hill for issuing absentee ballots for improper or incomplete applications in 2014.

Defendants were not apprised of one of the alleged suppression activities until receipt of the motion. Again, even once apprised, it is impossible to investigate without identification of poll workers or the several African Americans setting forth early voting procedure challenges.

## CONCLUSION

Plaintiffs have failed to show one iota of proof or substantiated evidence that Defendants do not intend to negotiate in good faith. Hence the parties should be able to continue the avenues discussed in phone conversations among William V. Custer, Adam Nelson, Barry Fleming and Andrea Grant.

Plaintiffs have failed to present any rationale to grant Plaintiffs' leave to amend its compliant. Furthermore, Plaintiffs have not illustrated any activity or inaction even remotely rising to a feasible inference for suppression of the African American vote in advance of the May 24th election.

Plaintiffs have not shown the Court a true and critical need for another hurriedly called status conference thus taking staff and counsel away from the crucial and pressing task at hand – principally to ensure a legally conducted election for Hancock County on May 24th. Therefore, Defendants request the Court deny the Plaintiffs requests for relief.

Dated this 19th day of May, 2016.

s/Andrea Grant, Esq.
ANDREA GRANT
Georgia Bar No. 619471
Attorney for Defendants

LAW OFFICE OF
ANDREA GRANT, LLC
504 Bowers Street
P.O. Box 60
Royston, GA 30662
(706) 245- 9293
E-Mail: andreagna@bellsouth.net

s/ Barry A. Fleming, Esq.
BARRY A. FLEMING
Georgia Bar No. 262945
F. ADAM NELSON
Georgia Bar No. 845950
Attorneys for Defendants

OF COUNSEL:

FLEMING & NELSON, LLP
631 Ronald Reagan Dr., Suite 201
P.O. Box 2208
Evans, GA 30809
(706) 434- 8770
E-Mail: bfleming@flemingnelson.com
E-Mail: anelson@flemingnelson.com

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA

CERTIFICATE OF SERVICE

This is to certify that I have on this day served to all the parties in this case in accordance with the directives from the Court Notice of Electronic Filing ("NEF") which was generated as a result of electronic filing.

Dated this 19th day of May, 2016.

s/ Barry A. Fleming, Esq.
BARRY A. FLEMING
Georgia Bar No. 262945
F. ADAM NELSON
Georgia Bar No. 845950
Attorneys for Defendant
FLEMING & NELSON, LLP
631 Ronald Reagan Dr., Suite 201
P.O. Box 2208
Evans, GA 30809
(706) 434-8770
E-Mail: bfleming@flemingnelson.com
E-Mail: anelson@flemingnelson.com

p:\aclients\hancock boer\response to emergency motion.doc