**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| GEORGIA STATE CONFERENCE OF | ) | |
| THE NAACP, as an organization; | ) | |
| GEORGIA COALITION FOR | ) | |
| THE PEOPLE'S AGENDA, | ) | |
| as an organization; SANQUAN THOMAS, | ) | |
| MERRITH HUBERT, TAURUS HUBERT, | ) | |
| JOHNNY THORNTON, | ) | |
| MARTEE FLOURNOY, and | ) | CIVIL ACTION |
| LARRY WEBB, | ) | FILE NO. 5:15-cv-414-CAR |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HANCOCK COUNTY BOARD OF | ) | |
| ELECTIONS AND REGISTRATION; | ) | |
| et al. | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT HANCOCK COUNTY BOARD OF ELECTIONS AND
REGISTRATION'S MOTION FOR PROTECTIVE ORDER AND MOTION
FOR A CONTINUANCE RELATING TO THE 30(b)(6) DEPOSITION
<u>NOTICED BY PLAINTIFFS</u>**

COMES NOW the HANCOCK COUNTY BOARD OF ELECTIONS AND

REGISTRATION, and, pursuant to Fed. R. Civ. P. 26(c), moves for a protective

order and an order for a continuance relating to the 30(b)(6) deposition noticed by

Plaintiffs for June 28, 2016.

## **INTRODUCTION**

This is an action for declaratory and injunctive relief for alleged violations of the Voting Rights Act, the Fourteenth Amendment of the United States Constitution and Title I of the Civil Rights Act, and the National Voter Registration Act of 1993, brought pursuant to 42 U.S.C. § 1983 and 52 U.S.C. §§ 10101 et seq. Plaintiffs allege that the Defendants improperly removed voters from the electoral rolls of Hancock County in violation of federal challenge and removal procedures after several voters were challenged by citizens of Hancock County, following investigation and hearings on those challenges. Defendants deny that they acted improperly in removing those voters whose presence on the rolls was successfully challenged and who were rightly removed.

## **HISTORY OF THE HANCOCK COUNTY BOARD OF ELECTIONS AND REGISTRATIONS**

In 2011 Defendant Hancock County Board of Elections and Registration ("Elections Board") was established by local legislation enacted by the Georgia General Assembly. 2011 Ga. Laws 3710. By virtue of that local legislation, the Elections Board replaced and succeeded the Probate Judge as the Election Superintendent and the "the Board of Registrars of Hancock County" as the registrar. 2011 Ga. Laws 3710 at § 1. The local legislation mandated that the Members of the newly constituted Elections Board be appointed by no later than

July 1, 2011. 2011 Ga. Laws 3710 at § 3(b)(1).

## LAW GOVERNING 30(b)(6) DEPOSITIONS

The purpose underlying the 30(b)(6) deposition is to prevent an entity from hiding knowledge known by someone affiliated with the entity by presenting witnesses who can legitimately claim ignorance. Ierardi v. Lorillard, Inc., No. 90–7049, 1991 WL 66799, *2 (E.D. Pa. Apr. 15, 1991), at *2 (without the rule, a corporation could "hide behind the alleged 'failed' memories of its employees"). To further that interest, a 30(b)(6) deposition notice must "describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). Additionally, the topics set forth in the 30(b)(6) notice should "be limited to a relevant time period, geographic scope, and related to claims" that are at issue in the case. Young v. United Parcel Serv. of Am., Inc., 2010 WL 1346423, *9 (D.Md. Mar. 30, 2010).

In response, the entity which is the subject of the 30(b)(6) notice is responsible for producing at the time and place of the noticed depositions one or more individuals who are capable of testifying concerning the entity's knowledge of the topics described with reasonable particularity. Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co., 497 F.3d 1135, 1147 (10th Cir. 2007). The individual designated by the entity is deemed to present the entity's position on the noticed topics. United States v. Taylor, 166 F.R.D. 356, 361 (M.D. N.C. 1996). As a result, the testimony of the designated individual has the effect of an evidentiary

admission. U.S. ex rel Fago v. M & T Mort. Corp., 235 F.R.D. 11, 22 (D.D.C 2006).

In addition to the duty to designate an individual to testify on the entity's behalf, the entity is responsible for preparing the designated individual so that the designee is capable of articulating the entity's collective knowledge during the deposition. Great Am. Ins. Co. v. Vegas Constr. Co., Inc., 251 F.R.D. 534, 540 (D. Nev. 2008). This duty of preparation is limited to matters reasonably known to the entity and reasonably available to it. Fowler v. State Farm Mut. Auto. Ins. Co., No. 07-00071 SPK-KSC, 2008 WL 4907865, at *4-5 (D. Haw. 2008); see also Fed. R. Civ. P. 30(b)(6)(entity "must testify about information known or reasonably available" to the entity).

If an entity is unable to designate an individual to speak on behalf of the entity because it lacks the ability to obtain the requisite knowledge due to the absence of obtainable information, the entity is not obligated to designate an individual on the topic at issue. Calzaturficio S.C.A.R.P.A. s.p.a. v. Fabiano Shoe Co., Inc., 201 F.R.D. 33, 39 (D. Mass. 2001); see also Dravo Corp. v. Liberty Mut. Ins. Co., 164 F.R.D. 70, 76 (D. Neb. 1995).

## LAW GENERALLY GOVERNING DISCOVERY

The overarching purpose of the discovery rules is "to provide a mechanism for making relevant information available to litigants." <u>Kinetic Concepts Inc. v. Convatec Inc</u>., 268 F.R.D. 255, 257 (M.D.N.C. 2010) (citing Fed. R. Civ. P. 26 Advisory Committee's Notes, 1983 Amendment)). Unfortunately, litigants sometimes "attempt to use discovery tools as tactical weapons[,] rather than to expose the facts and illuminate the issues[,] by overuse of discovery ... " See Fed. R. Civ. P. 26 Advisory Committee's Notes, 1983 Amendment. To prevent such abuses, discovery should be used in a manner that is judicious and does not unnecessarily burden other parties. <u>Id</u>.

To curb discovery abuses and misuses, courts are expressly empowered to "limit the frequency or extent of discovery ... if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome or less expensive ..." FED. R. CIV. P. 26(b)(2)(C)(i).

## THE 30(b)(6) NOTICE AT ISSUE

On June 21, 2016, Plaintiffs served an Amended 30(b)(6) deposition notice ("30(b)(6) notice") on the Elections Board relating to a deposition scheduled for June 28, 2016. See Plaintiff's Amended 30(b)(6) deposition notice, attached hereto as Exhibit A. That deposition notice lists the following topics for examination:

(1) Past practices by the BOER related to sending mail to voters and the use of forwardable versus nonforwardable mail since August 2014.

(2) Past procedures employed by the BOER regarding voter list maintenance activities,particularly for voters who have moved and whether the county has regularly complied with NVRA requirements over the years since 2006.

(3) Past instances of voter fraud in Hancock County since 1996, the nature of that fraud, and the identity of participants in the fraud.

(4) Past attempts by BOER members to remove voters from the Hancock County registration list based on their residential status since 2010, as reflected in comments and proposals put forward by BOER members at public hearings held between July and November of 2011.

(5) Past attempts by the Sparta City Administrator and other city officials to remove voters from the list of registered voters eligible to vote in the City of Sparta since 1980 including, but not limited to, attempts to do so in 1984 and 1986.

(6) Changes to the City of Sparta's municipal boundaries since 1965.

(7) The City of Sparta's attempt to use numbered posts for city council elections in 1991 and 1992.

(8) The video documentary, created by the Thames Production Company, of the racial dynamics in Hancock County before and after the emergence of John McCown, and the facts presented in that video.

(9) Past election contests made in state court in Hancock County since 1986.

(10) Past attempts by BOER members or Hancock County employees to verify voters' residence through comparison with driver's license records since 2010.

(11) Past practices of the BOER and Hancock County elections officials related to determining the eligibility of absentee ballots since 2006.

(12) The racial demographics of voters who did not receive absentee ballots after submitting an application for one and voters whose absentee ballots were not counted as a vote in elections held since August 2014.

(13) The claims, allegations, and defenses asserted in this action.

## ATTEMPTS AT RESOLVING OBJECTIONS

On June 23, 2016, Defendant articulated various objections to the 30(b)(6) notice. Plaintiffs responded to those objections the following day. See true and correct copy of email from Jennifer Dempsey, dated June 24, 2016, attached hereto as Exhibit B. Therein, Plaintiffs communicated that they were abandoning topics 6, 8 and 9. Exhibit B. Moreover, Plaintiffs agreed to limit topics 4, 10 and 11 so that those topics did not extend beyond 2011, the year of the Elections Board's creation. Id. As a result, the Elections Board's remaining objections relate to topics 2, 3, 5 and 7 and 13.  The nature of the Election Board's objections are set forth below.

## ARGUMENT AND CITATIONS TO AUTHORITY

The topics identified by Plaintiffs in the 30(b)(6) notice are objectionable for a variety of reasons. In particular and as explained in more detail below, the topics are objectionable for the following reasons:

-Plaintiffs are attempting to use the 30(b)(6) process to force the Elections Board to collect information that relates to the practices, policies and actions of entities that are legally and politically separate from the Elections Board without establishing that the Elections Board's knowledge of those foreign practices and policies are relevant to this litigation.  Because the topics relate to the public actions of

other governmental entities, many of these topics are unduly burdensome to the Elections Board and equally accessible to Plaintiffs.

-Plaintiffs are unreasonably attempting to burden and harass the Elections Board by adding new topics in response to the Elections Board's objections.  In particular, in response to the Elections Board's objections, Plaintiffs propose to add approximately fifteen (15) new topics to the June 28th 30(b)(6) deposition that were not expressly or implicitly identified in the 30(b)(6) notice.

A. Topic 2

The second topic identified by Plaintiff states as follows: "*Past procedures employed by the BOER regarding voter list maintenance activities, particularly for voters who have moved* and whether the county has regularly complied with NVRA requirements over the years since 2006."

As communicated to Plaintiffs, the first part of Topic 2, i.e., the portion italicized, is not objectionable. However, the remaining portion of Topic 2, i.e., the non-italicized portion is objectionable for several reasons. First, because the Elections Board was created in 2011, practices dating back to 2006 are overbroad from a time perspective and irrelevant as procedures that predate the Elections Board's existence are not relevant to the Elections Board's practices and

procedures at issue in this matter. By referencing "the county," Plaintiffs expressly acknowledge that practices dating back to 2006 do not relate to the Elections Board.

The reference to "the county" is also significant from an objection standpoint because Plaintiffs are attempting to force the Elections Board to present "knowledge" relating to the practices of a separate and distinct entity. Stated differently, Plaintiffs are seeking to require the Elections Board to create knowledge relating to another entity's practices as opposed to articulating knowledge about its own practices it already possesses in some form.

In response to the Elections Board's objections, Plaintiffs offered the following rationale:

> You have agreed to the 30(b)(6) topic that states "past procedures employed by the BOER regarding voter list maintenance activities, particularly for voters who have moved." As to the remainder of the topic, the Plaintiffs clarify that they only ask that the BOER testify about what the BOER knows about whether Hancock County has regularly complied with NVRA requirements since 2006, or what information is reasonably available to the BOER on this topic. The BOER's professed ignorance of NVRA requirements to date makes this topic relevant to this action.

Exhibit B. It is neither apparent nor explained how the Elections Board's "professed ignorance of NVRA" requirements would justify subjecting the 30(b)(6) designee to questions about an independent entity's compliance with the NVRA.

Because of the Open Records Act, O.C.G.A. §§ 51-18-70 et. seq, Plaintiffs have as much ability to acquire knowledge of Hancock County's past election practices as does the Elections Board. To the extent Plaintiffs believe that the county's past practices dating back to 2006 are somehow relevant to its claims, it is free to expend the time and energy it deems prudent to obtain that knowledge through the Open Records Act and a non-party 30(b)(6) deposition directed at the county.

B. Topic 3

The third topic identified by Plaintiffs states as follows: "Past instances of voter fraud in Hancock County since 1996, the nature of that fraud, and the identity of participants in the fraud."

Topic 3 is objectionable to the extent that Topic 3 predates the existence of the Elections Board. By invoking a twenty (20) year period of time, this topic is necessarily overbroad from a time and subject matter perspective. Additionally, as noted above in the context of Topic 2, any voter fraud that took place prior to the Elections Board's creation necessarily involves knowledge possessed by one or more entities that are not affiliated with the Elections Board.

In response to the Elections Board's objections, Plaintiffs offered the following rationale:

> With this topic, again, Plaintiffs are only asking the BOER to testify about information it knows or is reasonably available to the BOER. The BOER

11

has made past voter fraud an issue in this matter by taking the position that purging voters in the manner they did was necessary to combat alleged rampant voter fraud that has occurred in Hancock County.  Accordingly, the Plaintiffs are certainly entitled to ask the BOER about what it knows about alleged voter fraud, and why the BOER believed that was a motivation to conduct its purges of voters.

Exhibit B. Because Plaintiffs' explanation revolves around their claim that "[t]he BOER had made past voter fraud an issue in this matter by taking the position that purging voters in the manner they did was necessary to combat alleged rampant voter fraud," the Elections Board invites Plaintiffs to support that claim and to defend the 1996 starting point through citation to the record.

C.    Topic 5

Topic 5 reads as follows: "Past attempts by the Sparta City Administrator and other city officials to remove voters from the list of registered voters eligible to vote in the City of Sparta since 1980 including, but not limited to, attempts to do so in 1984 and 1986."

From reading Topic 5, one would inexorably assume that the City of Sparta was the subject of the 30(b)(6) deposition notice. Nonetheless, despite the fact that the City of Sparta is not even a party to this lawsuit and is legally separate from the Elections Board, Plaintiffs have served a 30(b)(6) deposition notice on the Elections Board that purports to require it to designate an individual with knowledge concerning 36 years of electoral practices of an unrelated governmental entity. Clearly, this topic is not aligned with the Elections Board's electoral

practices at issue in this lawsuit. Moreover, the Elections Board has no more access to this information than Plaintiffs do.

In response to the Elections Board's objections, Plaintiffs offered the following rationale:

> With this topic, again, Plaintiffs are only asking the BOER to testify about information it knows or is reasonably available to the BOER.  Accordingly, if the BOER has information about attempts to remove voters by the Sparta City Administrator or other city officials that occurred since 1980, the Plaintiffs are entitled to ask for this information.  Why the BOER proceeded to remove voters in the manner it did in violation of the NVRA, Section 2 of the VRA and the Civil Rights Act relates to the claims and defenses in this action, and accordingly, the Plaintiffs are entitled to ask for this information, particularly if the BOER's position is they removed voters in the manner it did because that was the way it has always been done in Hancock County.

Exhibit B.   Unlike its proffered justification for Topic 3, Plaintiffs do not even assert that Hancock County has taken the position that it took the action at issue in this lawsuit "because that was the way it has always been done in Hancock County." Instead, Plaintiffs merely assert that this topic is relevant "if" that is the position of the Elections Board.

F. <u>Topic 7</u>

Topic 7 reads as follows: "The City of Sparta's attempt to use numbered posts for city council elections in 1991 and 1992." the Elections Board incorporates by reference the objections noted above with respect to Topic 5.

In response to the Elections Board's objections, Plaintiffs offered the following rationale:

> With this topic, again, the Plaintiffs are only asking the BOER to testify about information it knows or is reasonably available to the BOER. The Plaintiff is entitled to depose the BOER on the knowledge it has regarding Sparta's use of numbered posts for city council elections and the Department of Justice's criticism of that particular practice on the basis that it would negatively impact minority voters.

Exhibit B. Although Plaintiffs claim an entitlement to depose the Elections Board on its knowledge of practices of a separate and distinct political entity, they do not provide any explanation for that position. More problematically, Plaintiffs are attempting to justify Topic 7 by introducing a new topic that was not even hinted at in the 30(b)(6) notice: "the Department of Justice's criticism of that particular practice on the basis that it would negatively impact minority voters." See Exhibit A.

K. Topic 13

Topic 13 reads as follows: "The claims, allegations, and defenses asserted in this action."

This topic as stated in the 30(b)(6) notice is patently objectionable because it fails to conform to the rule that topics must be identified with "reasonable particularity." Catt v. Affirmative Ins. Co., No. 2:08-CV-243-JVB-PRC, 2009 WL 1228605, *6–7 (N.D. Ind. Apr. 30, 2009); see Alexander v. Federal Bureau of

Investigation, 188 F.R.D. 111, 114 (D. D.C. 1998) (holding that deposition notice seeking testimony about "any matters relevant to this case" failed to meet the "reasonable particularity" requirement); Budget Dress Corp. f. Joint Bd. Of Dress & Waistmakers' Union of Greater New York, 24 F.R.D. 506, 507 (S.D.N.Y. 1959) (invalidating 30(b)(6) notice that requested information from persons "with knowledge of the facts.").

In response to the Elections Board's objections, Plaintiffs offered to cure the patently objectionable topic in the following manner:

> To clarify, the claims, allegations, and defenses encompassed in topic no. 13 are: challenges made to the BOER about voter eligibility, the BOER's consideration of those challenges, hearings held related to those challenges, discussions about those challenges, research into those challenges, actions related to the challenges, decisions made related to those challenges, evidence presented related to those challenges, notice provided related to those challenges, attempts to contact challenged or removed voters by mail or by the Sheriff's department, the removal of voters from the voting rolls, placing voters on challenged status, consideration of voters that were improperly removed, actions related to voters that were improperly removed, the participation of the Supervisor of Elections and the Sheriff's office in the voter challenge process, attempts to comply with the orders from the court related to restoring improperly removed voters, the Defendants' reasons for handling the challenges and removals as they did, whether and how the BOER has handled challenges to voter eligibility in the past, and compliance with Georgia law or the NVRA, Section 2 of the VRA and/or the Civil Rights Act in the voter challenge/removal process. The time period for this topic is from the beginning of 2015 to the present.

Exhibit B. As Plaintiffs did not propose to reschedule the 30(b)(6) deposition, <u>see</u> Exhibit B, it is apparently Plaintiffs' position that it is reasonable to cure a patently defective topic by articulating approximately fifteen (15) new, distinct topics two (2) business days before the 30(b)(6) deposition.[1] In effect, Plaintiffs are attempting to leverage their disregard for the "reasonable particularity" mandate into a tactical advantage for them and an undue and onerous burden for the Elections Board. To the extent that Plaintiffs want to query the 30(b)(6) designee about these topics, they need to serve a new 30(b)(6) notice that includes these new topics and articulates a deposition date that is realistic in light of the purported addition of these new topics.[2] To the extent that Plaintiffs desire to proceed with the 30(b)(6) deposition as originally noticed,  Topic 13 should be stricken in its entirety.

---

1 Because Plaintiffs' response did not contemplate a rescheduling of the 30(b)(6) deposition, <u>see</u> Exhibit B, the Elections Board has sought clarification concerning whether Plaintiffs are intending to keep the deposition as noticed for June 28, 2016. Due to the intervening weekend, it is likely that Plaintiffs will not respond until June 27th.  Nonetheless, the rapidly approaching deposition date requires the Elections Board to be proactive.

2 Because counsel has not yet had the opportunity to confer with the Elections Board with respect to these new topics, it is possible that the Elections Board will have substantive objections to these new topics to be presented at a later date.

## CONCLUSION

For the within and foregoing reasons, the Elections Board prays for a protective order that provides the following relief: striking the objectionable portion of Topic 2; limiting the scope of Topic 3 to 2011 forward; striking Topic 5 in its entirety; striking Topic 7 in its entirety; and striking Topic 13 in its entirety or, in the alternative, requiring Plaintiffs to re-notice the 30(b)(6) deposition to the extent they desire to query the designee concerning the newly articulated topics.

Additionally, because the 30(b)(6) deposition as contemplated by Plaintiffs is scheduled to take place on June 28, 2016, the Elections Board also prays for an order from this court continuing said deposition until such time as this court can enter an Order in response to this motion.

This 25th day of June, 2016.

O'QUINN & CRONIN, LLC

 /s/  Donald A. Cronin
Michael A. O'Quinn
Georgia Bar No. 553056
Donald A. Cronin
Georgia Bar No. 197270
Jacob Stalvey O'Neal
Georgia Bar No. 877316
Attorneys for Defendants

103 Keys Ferry Street
McDonough, Georgia 30253
(770) 898-0333
(770) 898-0330 Facsimile

## CERTIFICATE OF FILING AND SERVICE

This will hereby certify that I, the undersigned, have this day electronically filed the foregoing **DEFENDANT HANCOCK COUNTY BOARD OF ELECTIONS AND REGISTRATION'S MOTION FOR PROTECTIVE ORDER AND MOTION FOR A CONTINUANCE RELATING TO THE 30(b)(6) DEPOSITION NOTICED BY PLAINTIFFS** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

This 25th day of June, 2016.

**O'QUINN & CRONIN, LLC**

 /s/  *Donald A. Cronin*
Michael A. O'Quinn
Georgia Bar No. 553056
Donald A. Cronin
Georgia Bar No. 197270
Jacob Stalvey O'Neal
Georgia Bar No. 877316
Attorneys for Defendants

103 Keys Ferry Street
McDonough, Georgia 30253
(770) 898-0333
(770) 898-0330 Facsimile