IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| GEORGIA STATE CONFERENCE OF ) <br> THE NAACP, as an organization; ) <br> GEORGIA COALITION FOR THE ) <br> PEOPLES' AGENDA, as an organization; ) <br> SANQUAN THOMAS, ) <br> MERRITT HUBERT, TAURUS HUBERT, ) <br> JOHNNY THORNTON, MARTEE ) <br> FLOURNOY and LARRY WEBB; ) <br> ) <br>     Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> HANCOCK COUNTY BOARD OF ) <br> ELECTIONS AND REGISTRATION; ) <br> KATHY RANSOM, NANCY STEPHENS, ) <br> LINDA CLAYTON, ROBERT INGRAM, ) <br> and JIM YOUMANS, in their official ) <br> capacities as members of the Hancock ) <br> County Board of Elections and ) <br> Registration; and TIFFANY MEDLOCK, ) <br> in her official capacity as the Hancock ) <br> County Elections Supervisor, ) <br> ) <br>     Defendants. ) <br> _____ | Civil Action <br> Case No. 5:15-CV-414 CAR |

**PLAINTIFFS' RESPONSE TO THE BOER'S MOTION FOR
PROTECTIVE ORDER AND CONTINUANCE OF 30(B)(6) DEPOSITION**

Plaintiffs Georgia State Conference of the NAACP, Georgia Coalition for

the Peoples' Agenda, Sanquan Thomas, Merritt Hubert, Taurus Hubert, Johnny

Thornton, Martee Flournoy and Larry Webb ("Plaintiffs") hereby respond to Defendant's motion for protective order, and show the Court as follows:

## I. Introduction.

The alleged "emergency motion" for a protective order filed by defendants on Saturday evening which seeks to block a 30(b)(6) deposition of the Board of Elections and Registration ("BOER") is yet another in a very long line of efforts by these defendants to stall, delay and prevent the plaintiffs from pursuing their claims.

As the court may recall, the defendants have on numerous occasions in the past refused to provide information to plaintiffs and this Court had to order that they do so. Even today, the defendants are still refusing to provide documents to plaintiffs that are clearly in their possession, custody and control. The failure of defendants to produce such documents will be the subject of a separate motion.

In this brief, the plaintiffs will focus upon the defendants' desperate and last minute effort to forestall a 30(b)(6) deposition of the BOER. How we got to this point is easily understood once one considers recent events. As the Court may recall, at our last status conference, plaintiffs requested that discovery in this case commence for several reasons:

1) the defendants had failed to respond to plaintiffs' proposal to resolve the case for nearly three months; indeed, well over three months have now elapsed and they still have not responded;

2) the defendants were engaging in additional efforts to suppress the African-American vote in advance of the primary elections scheduled for May 24, 2016; and

3) the plaintiffs needed discovery if they were going to resolve the legal issues presented by defendants' actions in advance of the November general elections.

Thus, on May 19, 2016, the Court held a status conference and ordered the parties to conduct depositions during the last week of June and the first week of July. Since that moment, plaintiffs have been working to arrange those depositions in spite of objections by defendants and proposals by defendants to move the depositions.

On May 24, 2016, the primary elections in Hancock County took place. As evidence that it was not just the plaintiffs who had concerns about the election, the Department of Justice was present in Hancock County to monitor the election. The election itself was marred by so many procedural irregularities that even two of the BOER's own members, and defendants herein, refused to certify the election to the Georgia Secretary of State. It now appears that in light of these irregularities, at least one member of the BOER has suggested in a recent BOER meeting that the Hancock County Elections Supervisor, Tiffany Medlock, also a defendant herein, should be dismissed.

It is hardly surprising that in light of the current chaos involving the BOER and elections in Hancock County that the defendants do not wish to put up a

representative to testify on behalf of the BOER at this time. Given the high level of dissension among its members and staff, it may well be that the BOER is unable to obtain consensus about who should testify on its behalf. Thus, the only strategy left to defendants is to delay.

For their part, the plaintiffs have diligently pursued the deposition of the defendants. On May 25, 2016, the day after the primary, plaintiffs sent defendants their list of deponents and requested a representative of the BOER under Rule 30(b)(6) as one of them. [See Exhibit A attached hereto]. In response to defendants scheduling issues, plaintiffs sent out a revised schedule on June 2, again requesting a representative of the BOER. [See Exhibit B attached hereto]. On June 6, counsel for defendants asked for more specificity on the Rule 30(b)(6) topics and the plaintiffs supplied those topics to defendants. [Exhibit C attached hereto]. Those topics stated with "reasonable particularity" the information on which the plaintiffs wished to depose the BOER, as required by Fed. R. Civ. P. 30(b)(6).

Thereafter, on June 17, plaintiffs' counsel served notices of deposition on the defendants, including a notice of a 30(b)(6) deposition on the BOER, once again attaching the topics the plaintiffs had previously provided to defendants counsel. [See June 17, 2016 notice of the BOER 30(b)(6), attached hereto at Exhibit D]. While that notice of 30(b)(6) deposition notice included a topic that would cover

the claims and defenses in this lawsuit, (Topic No. 2, "Past procedures employed by the BOER regarding voter list maintenance activities, particularly for voters who have moved . . ."), the plaintiffs wanted to make it clear that they would depose the BOER witnesses on the claims and defenses in the action, and amended the 30(b)(6) notice to include that one clarification.  [See June 21, 2016, amended notice of the BOER 30(b)(6), including a topic of the "Claims, defenses, and allegations in this action," attached hereto at Exhibit E].  Thus, plaintiffs' topics were only amended once, a full week before the deposition was scheduled to occur.

On June 16, an additional set of attorneys made an appearance in this case on behalf of the defendants.  [See ECF Doc. No. 54].  On June 16, immediately after receiving the notice of appearance, plaintiffs' counsel called Mr. O'Quinn, one of the newly appeared defense attorneys, and asked him to please let them know if he had concerns about the scheduling of the depositions.   Plaintiffs' counsel told Mr. O'Quinn that they would be glad to work with him, and confirmed that he had the deposition notices.   Mr. O'Quinn told plaintiffs' counsel that he understood that counsel from the Lawyers Committee for Civil Rights had to book flights from Washington, D.C. to travel to Sparta to take the depositions that the court had ordered, and that he would call if he had concerns about scheduling.  Neither Mr. O'Quinn, nor any other attorney that represents the defendants called back to voice any concerns with the deposition schedule.

Not only did defendants' counsel not voice any concerns about the depositions schedule, on Wednesday, defendants' counsel specifically confirmed the proposed deposition schedule in an email.  [See June 22, 2016 email from Defendants' counsel confirming deposition schedule, attached hereto at Exhibit F].  Defendants' counsel gave every indication that the depositions would go forward as ordered by the Court.  Plaintiffs Washington, D.C. counsel made travel plans, Plaintiffs' counsel prepared for the depositions, and made the necessary arrangements for the depositions to occur.

It was not until Thursday evening, June 23, after hours, that defendants' counsel raised any concerns about the depositions whatsoever.  At that time, the defendants sent plaintiffs' counsel a 16 page motion for protective order that they had already drafted before ever speaking with or writing to plaintiffs' counsel.  The motion was very similar to the motion for protective order the defendants ultimately filed with the Court yesterday.  In their June 23rd email, defendants' counsel made it clear that he was unable to discuss the defendants' concerns regarding the 30(b)(6) deposition of the BOER by telephone the next day, but would be able to receive an email about it at the end of the day.  [See June 23, 2016 email and proposed protective motion from defendants' counsel, attached hereto at Exhibit G].

Thereafter, plaintiffs' counsel proceeded to address defendants' stated concerns with speed and in good faith the very next day.  Plaintiffs narrowed down many of the 30(b)(6) topics, clarifying others, and agreed to remove some topics as 30(b)(6) topics altogether, reserving the right to ask individual witnesses about those topics instead.  [See June 24, 2016 email from plaintiffs' counsel, attached hereto at Exhibit H].   Indeed, the Plaintiffs were, and remain, willing to provide any clarification necessary for this deposition to move forward.  Again, plaintiffs' counsel asked defendants' counsel to call if further discussion was needed.

Defendants' counsel did not call.

Instead, on Friday evening, at 6:47 p.m., counsel for the BOER took the position that they could not possibly produce any witness on Tuesday on any topic included in the 30(b)(6), including the *topic that covers the very essence of this lawsuit*.  [See June 24 email from defendants' counsel, attached hereto at Exhibit I].  If counsel for the BOER is to be believed, it cannot even produce one witness on how the BOER went about purging qualified voters from the voting rolls of Hancock County.  It has become clear that the defendants do not want further clarification of the Rule 30(b)(6) topics  -- they want to eliminate the deposition in its entirety – and one can easily see that from the tactics that they have employed.

## II. The BOER's 30(B)(6) Notice Articulates Topics that are Relevant to the Claims and Defenses in the Lawsuit, and that are Described with Reasonable Particularity.

Under the Federal Rules of Civil Procedure, the scope of discovery the Plaintiff may seek generally, and in its 30(b)(6) deposition of the BOER is as follows:

> "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense - including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter."

See Fed. R. Civ. P. 26.  Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, a party can send a notice of deposition to a governmental agency (like the BOER), and describe with reasonable particularity the matters for examination. See Fed. R. Civ. P. 30.  The agency must then designate one or more officers, directors, or managing agents to testify about information "known or reasonably available to the organization."  Id.

Here, the Plaintiffs have described the topics requested with particularity, and those topics are relevant to the claims and defenses in this action.  Rule 30(b)(6) only requires that the BOER testify about the information known or reasonably available to the organization, and that is all the Plaintiffs expect the

BOER to do in responding to the notice under Rule 30(b)(6). See Fed. R. Civ. P. 30(b)(6).

Each of the individual topics about which the defendants now complain, are addressed below:

**A.     Topics that Address the History of Discriminatory Official Actions in Hancock County and Sparta.**

The defendants object to certain topics on the grounds that the BOER should not be required to testify about information that the BOER knows or is reasonably available to the BOER related to past discriminatory official actions in Hancock County and the city of Sparta. Those topics include the following:

- **Topic No. 2:  Past procedures employed by the BOER regarding voter list maintenance activities, particularly for voters who have moved and whether the county has regularly complied with NVRA requirements over the years since 2006.**

  The defendants object to a portion of topic no. 2 and argue that the BOER should not have to testify about information that is known or reasonably available to the BOER relating to the subject of how Hancock County itself has handled voter maintenance, particularly for voters have removed

- **Topic No. 5: Past attempts by the Sparta City Administrator and other city officials to remove voters from the list of registered voters eligible to vote in the City of Sparta since 1980 including, but not limited to, attempts to do so in 1984 and 1986.**

  The defendants object to topic no. 5 in its entirety.

- **Topic No. 7:  The City of Sparta's attempt to use numbered posts for city council elections in 1991 and 1992.**

9

The defendants object to topic no. 7 in its entirety.

Interestingly, for all of the above topics, the BOER has not stated that the BOER has no knowledge on these subjects, only that it should not be forced to share that information in discovery

Hancock County's and Sparta's past practices related to suppressing and/or purging Black voters in Hancock County, are absolutely relevant to the claims and defenses in this matter.  Defendants ignore the actual allegations in the amended complaint and the law when they argue otherwise.  What Hancock County, Sparta, and the BOER have done have done related to suppressing or purging Black voters is relevant to the claims and defenses in this lawsuit.  See Amended Complaint at 228 -234.   The Eleventh Circuit confirms that evidence of past discrimination is relevant to the claims for violations of Section 2 of the Voting Rights Act.  In U.S. v. Marengo County Commission, 731 F.2d 1546 (11th Cir.1984), the United States Court of Appeals recognized that in case alleging violations of Section 2 of the Voting Rights Act, the Court must examine the totality of the circumstances to determine whether a violation has occurred.  The Eleventh Circuit has set forth nine factors which are to be weighed under the totality of circumstances approach, and those factors include the following:

> 1. the extent of any history of official discrimination in the state or political subdivision that touched the right of the members of the minority

group to register, to vote, or otherwise to participate in the democratic process;

2. the extent to which voting in the elections of the state or political subdivision is racially polarized;

3. the extent to which the state or political subdivision has used unusually large election districts, majority vote requirements, anti-single shot provisions, or other voting practices or procedures that may enhance the opportunity for discrimination against the minority group;

4. if there is a candidate slating process, whether the members of the minority group have been denied access to that process;

5. the extent to which members of the minority group in the state or political subdivision bear the effects of discrimination in such areas as education, employment and health, which hinder their ability to participate effectively in the political process;

6. whether political campaigns have been characterized by overt or subtle racial appeals;

7. the extent to which members of the minority group have been elected to public office in the jurisdiction. Additional factors that in some cases have had probative value as part of plaintiffs' evidence to establish a violation are:

8. whether there is a significant lack of responsiveness on the part of elected officials to the particularized needs of the members of the minority group.

9. whether the policy underlying the state or political subdivision's use of such voting qualification, prerequisite to voting, or standard, practice or procedure is tenuous.

See United States v. Dallas Cty. Comm'n, 739 F.2d 1529, 1534-35 (11th Cir. 1984); 1982 Senate Report at 28–29, reprinted in 1982 U.S.Code Cong. & Ad.News at 206–07 (footnotes omitted).

Thus, the history of discrimination in Sparta and Hancock County is relevant to the claims in this lawsuit, and the BOER's knowledge of that discrimination is relevant to the claims asserted against the BOER. Surely the plaintiff is entitled to question the BOER about its knowledge of this history, since that knowledge is relevant to the claims in this lawsuit.

Further, the defendants argue that the plaintiffs should be prevented from deposing the BOER about its knowledge on practices of the county or city because the plaintiff can go ask the county or city instead. This argument cannot prevent the deposition for several reasons. First, only the BOER would know what the BOER knows about the county's or city's practices of removing voters. Second, an objection that discovery is available from someone else is not a valid objection to a discovery request. Because the requested information relates to the claims and defenses in this action, it is well within the scope of permissible discovery. Fed. R. Civ. P. 26.

Because topics 2, 5 and 7 describe the information with reasonable particularity and relate to the claims and defenses in this action, the defendants' motion for protective order should be denied.

### B.     Topic No. 3 - Alleged Past Instances of Voter Fraud.

Defendants object to topic no 3 which asks for information on:

**Topic No. 3: Past instances of voter fraud in Hancock County since 1996, the nature of that fraud, and the identity of participants in the fraud.**

Specifically, defendants have asked that this topic be limited to the BOER's knowledge from 2011 forward.  With topic no. 3, again, Plaintiffs are only asking the BOER to testify about information it knows or is reasonably available to the BOER.   It is surprising that defendants would now take the position that past voter fraud is not a topic on which discovery can be sought, because it was the BOER itself that made past voter fraud an issue in this matter by taking the position that purging voters in the manner they did was necessary to combat alleged rampant voter fraud that has occurred in Hancock County.   In fact, in he most recent status conference with the Court, the defendants went on at length about how concerned they were with alleged prior voter fraud in Hancock County.  Accordingly, the Plaintiffs are certainly entitled to ask the BOER about what it knows about alleged voter fraud, and why the BOER believed that was a motivation to conduct its purges of voters.

Because this topic describes the information with reasonable particularity and relates to the claims and defenses in this action, the defendants' motion for protective order should be denied.

**C.    Topic No. 13 - The claims, allegations, and defenses asserted in this action.**

Originally, defendants objected to topic no. 13 arguing that it was not specific enough for the BOER to prepare a Rule 30(b)(6) witness. In response to that objection, the plaintiffs attempted to clarify topic no. 13 for the defendants in good faith and provided the following list of what is encompassed in the "claims and defenses" in this lawsuit:

> To clarify, the claims, allegations, and defenses encompassed in topic no. 13 are: challenges made to the BOER about voter eligibility, the BOER's consideration of those challenges, hearings held related to those challenges, discussions about those challenges, research into those challenges, actions related to the challenges, decisions made related to those challenges, evidence presented related to those challenges, notice provided related to those challenges, attempts to contact challenged or removed voters by mail or by the Sheriff's department, the removal of voters from the voting rolls, placing voters on challenged status, consideration of voters that were improperly removed, actions related to voters that were improperly removed, the participation of the Supervisor of Elections and the Sheriff's office in the voter challenge process, attempts to comply with the orders from the court related to restoring improperly removed voters, the Defendants' reasons for handling the challenges and removals as they did, whether and how the BOER has handled challenges to voter eligibility in the past, and compliance with Georgia law or the NVRA, Section 2 of the VRA and/or the Civil Rights Act in the voter challenge/removal process. The time period for this topic is from the beginning of 2015 to the present.

[See Exhibit H]. Defendants now take the position that the above clarification amounts to "fifteen new topics," and the BOER cannot possibly have a BOER representative prepared to talk about these key and fundamental issues in this lawsuit.

As an initial matter, the originally asserted topic 13 of the "claims, allegations, and defenses asserted in this action describes the topic with "reasonable particularity," and thus meets the requirements of Rule 30(b)(6) of the Federal Rules of Civil Procedure. This is not an overly complicated lawsuit - the plaintiffs allege that the defendants violated state and federal law in purging voters off of the voting rolls in the Fall of 2015. The "claims, allegations, and defenses asserted in the action" obviously concern the defendants' purge of voters off of the voting rolls in violation of state and federal laws. Accordingly, the originally asserted topic 13, and the clarification provided once requested by defendants, surely meet the requirement that topics be articulated with "reasonable particularity."

Because topic no. 13 describes the information with reasonable particularity and relates to the claims and defenses in this action, the defendants' motion for protective order should be denied.

## II. Conclusion.

The defendants' motion for protective order is yet another attempt by the defendants to delay this matter and delay the plaintiffs' pursuit of justice. Accordingly, the plaintiffs respectfully urge this Court to deny the plaintiffs' motion for protective order in its entirety.

Respectfully submitted this 26th day of June.

>  */s/ William V. Custer*
> William V. Custer
> Georgia Bar No. 202910
> Jennifer B. Dempsey
> Georgia Bar No. 217536
> Bryan Cave LLP
> One Atlantic Center
> Fourteenth Floor
> 1201 West Peachtree Street, NW
> Atlanta, Georgia 30309-3488
> Phone: (404) 572-6600
> Fax:    (404) 572-6999
> E-mail: bill.custer@bryancave.com
>             jennifer.dempsey@bryancave.com

*Admitted pro hac vice*:

Ezra Rosenberg
New Jersey Bar No. 012671974
Julie M. Houk
California Bar No. 114968
John Powers
District of Columbia Bar No. 1024831
The Lawyers' Committee for
Civil Rights Under Law
1401 New York Avenue NW
Suite 400
Washington, DC 20005
Phone: (202) 662-8345 (Ezra Rosenberg)
Phone: (202) 662-8391 (Julie Houk)
Phone: (202) 662-8389 (John Powers)
Fax:   (202) 783-0857
Email: erosenberg@lawyerscommittee.org
           jhouk@lawyerscommittee.org
           jpowers@lawyerscommittee.org

*Counsel for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| GEORGIA STATE CONFERENCE OF THE NAACP, as an organization; GEORGIA COALITION FOR THE PEOPLES' AGENDA, as an organization; SANQUAN THOMAS, MERRITT HUBERT, TAURUS HUBERT, JOHNNY THORNTON, MARTEE FLOURNOY and LARRY WEBB; | ) ) ) ) ) ) ) ) ) | Civil Action Case No. 5:15-CV-414 CAR |
| Plaintiffs, | ) | |
| v. | ) ) | |
| HANCOCK COUNTY BOARD OF ELECTIONS AND REGISTRATION; KATHY RANSOM, NANCY STEPHENS, LINDA CLAYTON, ROBERT INGRAM, and JIM YOUMANS, in their official capacities as members of the Hancock County Board of Elections and Registration; and TIFFANY MEDLOCK, in her official capacity as the Hancock County Elections Supervisor, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

_____

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the attorneys of record.

18

This 26th day of June, 2016.

>*/s/ William V. Custer*
>William V. Custer
>Georgia Bar No. 202910
>Jennifer B. Dempsey
>Georgia Bar No. 217536
>Bryan Cave LLP
>One Atlantic Center
>Fourteenth Floor
>1201 West Peachtree Street, NW
>Atlanta, Georgia 30309-3488
>Phone: (404) 572-6600
>Fax:    (404) 572-6999
>E-mail: bill.custer@bryancave.com
>           jennifer.dempsey@bryancave.com