# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

GEORGIA STATE CONFERENCE OF THE )
NAACP, as an organization; GEORGIA )
COALITION FOR THE PEOPLES' AGENDA, as )
an organization; SANQUAN THOMAS, )
MERRITT HUBERT, TAURUS HUBERT, )
JOHNNY THORNTON, MARTEE FLOURNOY )
and LARRY WEBB; )

      Plaintiffs, )

v. )

HANCOCK COUNTY BOARD OF ELECTIONS )
AND REGISTRATION; KATHY RANSOM, )
NANCY STEPHENS, LINDA CLAYTON, )
ROBERT INGRAM, and MILTON SIMMONS, in )
their official capacities as members of the Hancock )
County Board of Elections and Registration; and )
JOHN REID, in his official capacity as the )
Hancock County Elections Supervisor, )

      Defendants. )
)
)
)

Civil Action
Case No. 5:15-cv-414-CAR

**CONSENT DECREE**

---

## CONSENT DECREE

Plaintiffs contest a series of "challenge proceedings" conducted by Defendants between

July and October of 2015.

Plaintiffs allege that the challenges illegally targeted African-American voters, an

allegation which Defendants vigorously deny. Plaintiffs also allege the Defendants failed to

comply with all of the procedural requirements of state law when they conducted the challenge

1

proceedings. Again, this allegation is strenuously denied by Defendants. Although Defendants are agreeing to specific standards and procedures below, Defendants adamantly deny such items are being included due to any prior violation thereof.

One consideration involves the relationship between the National Voter Registration Act of 1993 ("NVRA), codified at 52 U.S.C. §10301, and the Georgia challenge statutes that allow a voter to be challenged, and potentially removed from the list of eligible voters immediately, based on a claim that the voter either: (1) never lived in the county or city in which he or she registered to vote, or (2) that even if properly registered initially, the voter has since moved and changed residency.

After assessing the application of the NVRA and its provisions concerning change of residency, and recognizing the supremacy of federal law where it conflicts with state law, the parties have entered into an agreement to resolve this case. Plaintiffs and Defendants have concluded that this lawsuit should be settled in accordance with this Decree, without any admission of liability by Defendants, to avoid incurring substantial expense and inconvenience of this litigation and to avoid the distraction of further litigation. This Consent Decree represents the parties' commitment to ensure that all citizens of Hancock County have an equal opportunity to participate in the electoral process. The Hancock County Board of Elections and Registration ("BOER") and its Elections Supervisor ("Elections Supervisor") intend to fully implement this Decree as part of ongoing efforts to ensure all voters have equal access to the polls. Plaintiffs and Defendants agree that this lawsuit should be resolved through the terms of this Decree, waive a hearing and entry of findings of fact and conclusions of law on all issues involved in this matter, and consent to the entry of this Decree.

2



ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED AS
FOLLOWS:

I.     NONDISCRIMINATORY CHALLENGE PROCEDURES

1.     Defendants, their officers, employees, agents, successors, and assigns, and all
other persons acting in concert with or on behalf of the Defendants, shall not engage in any
conduct having the purpose or effect of denying equal opportunity to participate in the political
process on account of race, including with respect to any challenge against a voter's eligibility
that is initiated or adjudicated by the BOER.

2.     Defendants, their officers, employees, agents, successors, and assigns, and all
other persons acting in concert or participation on behalf of the Defendants, shall uphold and
comply with all aspects of the Georgia Code related to voter eligibility and voter challenge
procedures, including but not limited to O.C.G.A. §§ 21-2-216 through 21-2-218, and §§ 21-2-
228 through 21-2-230, and in full compliance with the National Voter Registration Act of 1993,
52 U.S.C. §10301, as set forth in Section II of this Consent Decree.

3.     Defendants shall evaluate and decide voter challenges objectively and
independently based on the individual merits.

4.     Defendants shall not discriminate against any person on the basis of race or hold
members of one racial group to a higher standard than another group with respect to challenging
or assessing voters' eligibility to remain on the Hancock County voter registration list, whether
based on challenge or list maintenance.

5.     Defendants shall not subject any voter to additional or extraordinary means of
determining their qualifications to vote on the basis of race. All of Defendants' policies,
procedures, and practices with respect to voter challenges as well as the maintenance of an

3



accurate and current voter registration roll shall be uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965 and the National Voter Registration Act of 1993.

## II.   RESIDENCY-BASED CHALLENGES TO VOTER ELIGIBILITY

6.   Upon receiving a written challenge to a voter's eligibility based upon the allegation that he or she does not reside in Hancock County or the City of Sparta, the BOER or its legal counsel shall require the challenger, under the authority of O.C.G.A. §21-2-229(a), to specify if the challenge is based on the challenged voter's current residency status, or the residency status at the time the voter initially registered.

7.   Unless the challenger affirmatively states in writing that the challenge is based upon the challenged voter's residency status at the time he or she initially registered to vote in Hancock County, the BOER or is legal counsel shall inform the challenger that the challenge does not present grounds for contesting the eligibility of the voter to remain on the Hancock County registration list.

## III.   PROCESSING INACTIVE VOTERS AND VOTERS WHO HAVE MOVED

8.   Active or inactive voters who move from one county or municipality to another after the fifth Monday prior to a primary or election may vote in the county or municipality or precinct in which such elector is registered to vote. O.C.G.A. § 21-2-218(e).

9.   The BOER or Elections Supervisor shall provide the inactive list of electors at each polling place and early voting location. O.C.G.A. § 21-2-235(e).

10.   If an inactive voter has not changed residences, he or she may cast a regular ballot at an early voting location or the polling place for that address upon affirming in writing that he or she still resides at that location. O.C.G.A. § 21-2-235(c)(1).

4

11.    If an inactive voter has moved within the same voting precinct in Hancock County, he or she may cast a regular ballot at an early voting location or the polling place for that voting precinct upon completing a change of address card affirming the new address. O.C.G.A. § 21-2-235(c)(2).

12.    If an inactive voter has moved within Hancock County or the City of Sparta to a different precinct, he or she may cast a regular ballot at an early voting location or the polling place for the previous address, for that election and any runoffs resulting from such election only, upon completing a change of address card affirming the new address within Hancock County or the City of Sparta. O.C.G.A. § 21-2-235(c)(3).

13.    If an inactive voter casts a ballot, the BOER or Elections Supervisor shall restore the voter to active status and make any necessary corrections to his or her registration records. O.C.G.A. § 21-2-235(d).

14.    The BOER or Elections Supervisor shall not remove any inactive voter from the registration list until the day after the second November federal general election held after the voter was placed on the inactive list. 52 U.S.C. § 20507(d)(1); *see* O.C.G.A. § 21-2-235(b). No voter may be removed from the registration list for inactivity or in the course of any list maintenance activities within 90 days of a federal primary or general election. 52 U.S.C. § 20507(c); O.C.G.A. § 21-2-234(i).

15.    If the voter does not vote, declines to otherwise confirm his or her address or update his or her registration information, and does not otherwise contact an election official by the day after the second November federal general election held after the voter was placed on the inactive list, the BOER or Elections Supervisor may remove the voter from the inactive list. 52 U.S.C. § 20507(d)(1); *see* O.C.G.A. § 21-2-235(b).

5



## IV. FORMAL PROCEDURES AND GUIDELINES

16. The BOER shall formally adopt and strictly adhere to the following formal procedures and guidelines for conducting voter challenges and list maintenance activities pursuant to O.C.G.A. § 21-2-228 and adjudicating voter challenges pursuant to O.C.G.A. §§ 21-2-229 or 21-2-230 ("BOER's procedures and guidelines").

17. Any actions taken to implement the BOER's procedures and guidelines must comply with state and federal law, including but not limited to O.C.G.A. §§ 21-2-216 through 21-2-218, and §§ 21-2-228 through 21-2-230, the Voting Rights Act of 1965, the National Voter Registration Act of 1993, the Civil Rights Act of 1964, and the Constitutions of the United States and the State of Georgia.

18. Defendants shall not use information contained in the DDS database to challenge, or to sustain a challenge to, the eligibility of a voter to remain on the Hancock County voter registration list.

19. The BOER and the Elections Supervisor shall process all voter challenges made pursuant to O.C.G.A. § 21-2-229 expeditiously while erring in all instances on the side of preserving the right to vote. Before initiating the formal challenge hearing process, the Election Supervisor shall make reasonable attempts, including during non-traditional working hours, to call and email (if the voter supplied a phone number or email address on the registration form) the challenged voter to see if the issue can be resolved quickly, efficiently, and informally.

20. In the event that credible evidence emerges prior to or during a probable cause hearing that a challenge to the qualifications of any voter under Georgia law is racially motivated, or would have the result or effect of denying a voter the right to remain on the

6



Hancock County voter registration list because of the voter's race or ethnicity, the challenge shall be overruled pursuant to the Voting Rights Act of 1965.

21. If it is necessary to hold a challenge hearing, the Elections Supervisor or other elections officials shall contact the challenged voter by phone and email (if the voter supplied on email address on the registration form) to find a mutually convenient time to hold the hearing.

22. The Elections Supervisor or other elections officials shall make at least two reasonable attempts to call and/or email the challenged voters before scheduling their challenge hearing. The BOER shall make a reasonable effort to avoid conducting challenge hearings when challenged voters are not present or have requested a continuance due to their unavailability on the date or time chosen by the BOER for a challenge hearing. The challenged voter shall have the right to one (1) continuance upon request, and shall be granted additional continuances for good cause shown.

23. The BOER shall send all notices of challenge hearings to every challenged voter by forwardable first-class mail and email, if the voter provided the BOER with an email address on his or her voter registration form. Any email and mailing shall include a written acknowledgment of service form and a postage prepaid and pre-addressed envelope. Voters will be instructed to sign the acknowledgment of service form and return it to the BOER in person or by mail, email, or fax.

24. If a registered voter's eligibility to vote in Hancock County is challenged pursuant to O.C.G.A. § 21-2-229, Defendants shall strictly comply with § 21-2-229(b). Defendants must therefore provide notice at least three days in advance of an upcoming challenge hearing by sending a first-class, forwardable mailing to the address shown on the person's voter registration records. That mailing must include a copy of the written challenge.

7

25. In the event that the BOER proceeds with a challenge, it may utilize law enforcement officers to serve a summons or notice on any voter only as a matter of last resort when all other means of contact have failed, including the attempts to reach him or her described above. In no case shall the inability of a law enforcement officer to effect service of a challenge notice or summons on a registered voter constitute evidence that said voter is not qualified to vote in Hancock County.

26. The evidence proffered in support of a challenge to a voter's eligibility must be of the kind and quality of that which is accepted under the Georgia Rules of Evidence, excluding the residual exception codified as O.C.G.A. § 24-8-807. The BOER cannot consider hearsay or other evidence that would be inadmissible under the Georgia Rules of Evidence, even it might fit within the residual exception. Hearsay is evidence that is not based on a witness's personal knowledge, but was instead told to him or her secondhand.

27. The burden shall be on the challenger to prove the voter challenged is not qualified to remain on the list of electors.

28. A finding of probable cause under O.C.G.A. § 21-2-230 is equivalent to finding that there is sufficient reason, based upon known facts (which can be circumstantial) to believe that the challenged individual was never eligible to vote in Hancock County. Probable cause is more than mere suspicion or speculation that a voter never lawfully resided in Hancock County.

29. The BOER shall only sustain a challenge against a voter's eligibility if the challenger has established by "clear and convincing evidence" that the challenged voter was not eligible to vote in Hancock County at the time he or she registered to do so, and is not eligible to vote in Hancock County at the time of the hearing. The challenging elector retains the burden of

8



proof at all times throughout the challenge process, including the probable cause and ultimate determination phases, pursuant to § 21-2-229(c).

30.    The BOER shall not remove any voter based on a challenge from the Hancock County voter registration list who was properly registered to vote in Hancock County at the time of initial registration, but has moved from the address listed in their voter registration file. The sole procedure to be followed in this circumstance is Section 8 of the National Voter Registration Act of 1993, as outlined in Section II of this Consent Decree.

31.    Challenged voters are not required to affirmatively establish their eligibility at any stage in the challenge process. However, challenged voters are subject to the provisions of O.C.G.A. § 21-2-228(b) and (c) for production of documents, summons and subpoenas. In the context of a challenge that the voter was not a resident of Hancock County at the time of initial registration, for example, a challenged voter is not required but is entitled to provide proof of residence. The burden remains on the challenger to prove that the challenged voter was not a resident of the jurisdiction at the time he or she initially registered to vote, and is not currently eligible to vote in Hancock County.

32.    If the evidence is not clear and convincing that a voter is not qualified to vote in Hancock County, Defendants shall resolve all doubts about the eligibility of the voter in favor of preserving the right to vote.

33.    If any members of the BOER challenge the eligibility of voters in their individual capacity under O.C.G.A. § 21-2-229 while they remain a member of the BOER, they must recuse themselves from deliberating and voting on their own challenges.

34.    In the event that the BOER examines the qualifications of voters under O.C.G.A. § 21-2-228, Section 8 of the NVRA, or the Help America Vote Act of 2002, any such

9



examination or list maintenance activities shall be conducted in a uniform and non-discriminatory manner and shall not target voters in any particular locality for challenges to their qualifications to vote based upon their residency in the City of Sparta or to any other locality within the County.

35.    Subject to the terms of this Consent Order, the Elections Supervisor shall notify challenged voters of any change in registration status in writing by first class, forwardable mail. The Elections Supervisor shall also attempt to notify challenged voters by telephone and email, if the challenged voter's registration file includes a telephone number or email address.

## V.    PROVIDING NOTICE OF CHALLENGES TO PLAINTIFFS' COUNSEL

36.    The BOER and Elections Supervisor shall provide a designated individual of Plaintiffs' counsel with a copy of all written challenges within three business days of receipt of the same by the BOER or the Elections Supervisor for five years following the entry of this Consent Decree. The BOER and the Elections Supervisor shall provide the designated counsel with a copy of all notices, correspondence and other communications relating to challenges within three business day of the preparation or receipt of the same by the BOER or the Elections Supervisor. The BOER or the Elections Supervisor shall provide designated counsel with a copy of all notices, agendas, minutes, summaries, notes and audio recordings of all BOER regular and called meetings during which challenges to electors were discussed, considered or adjudicated within three business days of said meetings. The BOER and the Elections Supervisor shall provide designated counsel with copies of the final disposition of all challenges, and any letters or notices at the same time such is sent to challenged voters.

## VI.    RESTORATION OF PURGED VOTERS TO THE REGISTRATION LIST

37.    Defendants shall take no further action with regard to the eight voters restored to the registration list on February 25, 2016, who are listed in Appendix B. Those voters will have

two federal general election cycles to vote in an election or update their registration information before further being subject to the NVRA's list maintenance procedures.

38.     Defendants shall restore fourteen purged voters, listed in Appendix C, to the registration list. Those voters will have two federal general election cycles to vote in an election or update their registration information before further being subject to the NVRA's list maintenance procedures.

## VII.    EXAMINER

39.     Within 21 days of the date this Order is entered, Plaintiffs and Defendants shall submit the name, professional qualifications, resume and fee schedule of an agreed-upon person to serve as an Examiner to the Court only for voter challenges or list maintenance activities based on residency or change of address.

40.     The parties will make good faith efforts to propose Examiner candidates who reside in and/or maintain a regular place of business in Georgia in effort to avoid out of state travel costs by the Examiner, if possible.

41.     If the parties are unable to agree upon an individual to submit to the Court as the proposed Examiner, they shall each suggest one or more qualified individuals to the Court, and the Court may appoint one of those persons.

42.     The term of the Examiner shall initially run for three and a half years from the date of appointment. Upon motion of the Plaintiffs, the Court shall have the discretion to continue the Examiner's term if the Court concludes that such an extension is warranted due to violations of this Consent Order. No extension shall be awarded without notice to the Defendants and the Defendants having a reasonable opportunity to respond to the motion.

43.    The Examiner shall be paid a flat fee of up to five thousand dollars per year.  Any dispute concerning the Examiner's activities, fees, and expenses shall be decided by the Court upon motion of either party.

44.    The Examiner shall review Defendants' compliance with these formal procedures and guidelines only when the BOER conducts list maintenance activities pursuant to O.C.G.A. § 21-2-228 and when the BOER adjudicates voter challenges pursuant to O.C.G.A. §§ 21-2-229 or 21-2-230.  The Examiner may make non-binding recommendations to the BOER with respect to Defendants' compliance with these procedures, guidelines and the Consent Decree.

45.    In the event that the BOER does not adopt the Examiner's recommendations, any party, including the Defendants, may bring that issue to the Court's attention for resolution with reasonable notice to the other party and realistic opportunity to be heard.

46.    In the event that the BOER initiates list maintenance activities pursuant to O.C.G.A. § 21-2-228 or adjudicates voter challenges pursuant to O.C.G.A. §§ 21-2-229 or 21-2-230, the Elections Supervisor shall notify the Examiner of each challenge in writing on the same day he or she provides notice or items set forth in Paragraph 34 to designated counsel for Plaintiff.

47.    The Elections Supervisor will also provide the Examiner with a hard copy of all evidence or, in the case of oral testimony, a written description of all evidence offered in support of the challenge on the same day he or she provides that information to Plaintiffs' counsel.  The Elections Supervisor shall also provide the Examiner with the notice and agenda for any probable cause or challenge hearings, the evidence adduced at both hearings, the final disposition of the challenge, and any letters or notices sent to the challenged voter.

12



48.   In the event that Defendants receive a challenge from an elector under O.C.G.A. §
21-2-229, the BOER shall seek a recommendation from the Examiner as to whether the initial
written challenge and supporting documentation raise a bona fide question as to the voter's
registration or qualification. The Examiner shall make a written recommendation to the BOER
with respect to the determination of that challenge within five days of receiving information from
the BOER or the Elections Supervisor.

49.   The Examiner shall review the evidence presented and the ultimate determination
made by the BOER with respect to every voter challenge made pursuant to O.C.G.A. §§ 21-2-
228 through 21-2-230. If the Examiner disagrees with the procedures employed or the ultimate
determination made as to the substance of any challenge based on federal law, state law or the
BOER's procedures and guidelines, the Examiner will make all appropriate recommendations to
the BOER within five (5) days, except for good cause shown. Those recommendations may
include suggestions as to corrective actions.

50.   In the event that the BOER disagrees with any of the Examiner's
recommendations, any party, including Defendants, may bring that issue to the Court's attention
for resolution by the Court providing the other party with reasonable notice and opportunity to be
heard.

VIII.   ADDITIONAL RELIEF

51.   The parties acknowledge that the Court, in its discretion, may allow Plaintiffs a
reasonable attorney's fee as part of the costs of the litigation. The parties and the Hancock Board
of Commissioners are continuing to mediate concerning the amount of Plaintiffs' total
reasonable attorneys' fees and costs that have been accrued through the date of presentation of
this Consent Decree to the Court for approval. The parties and the Hancock Board of

13

Commissioners retain their respective rights with respect to this issue but hope to come to amicably resolve this issue pursuant to a separate agreement.

52. Plaintiffs' counsel may seek reasonable attorneys' fees and costs for work performed on any motion to enforce the Consent Decree that is granted in whole or in part. Plaintiffs' counsel may also seek reasonable attorneys' fees and costs in the event that the Court Orders an extension of the term of this Consent Decree and/or the Examiner's term due to a violation of the Consent Decree by the Defendants or the Court finds the Defendants in contempt of this Consent Decree. In the event Plaintiffs' counsel seek payment of such fees and costs, Plaintiffs' counsel will provide Defendants' counsel with a list of hours worked by each counsel and staff person, hourly rate and any costs incurred in connection with the work. In the event Defendants disagree with the statement of Plaintiffs' counsel, or the work or the requested payment amounts or rates, Defendants' counsel shall notify Plaintiffs' counsel in writing within five (5) days after receipt of the statement, and counsel for Plaintiffs and Defendants will attempt to informally resolve any dispute over the statement. In the event counsel for Plaintiffs and Defendants cannot reach an informal resolution of any such dispute, they shall submit the matter to this Court for a determination. Defendants shall deliver payment to the Plaintiffs' counsel no later than ten (10) days after receiving the statement of Plaintiffs' counsel or five (5) days after the resolution of any dispute.

53. Defendants alone shall bear any fees and costs incurred by the BOER or the Elections Supervisor for the purpose of complying with this decree. Defendants must furnish any challenge-related documents requested by Plaintiffs' counsel pursuant to the Georgia Open Records Act ("GORA") free of charge. Defendants are entitled to reasonable costs when responding to requests for all other documents pursuant to the GORA.

14



**IX. RETENTION OF JURISDICTION**

54.    The Court shall retain jurisdiction of this case for the term of the Consent Decree to enter further relief or such other orders as may be necessary to enforce the terms of this agreement, to resolve any disputes that may occur during the term of this Consent Decree, and to ensure Defendants' compliance with the law.

**X.    FINAL JUDGMENT**

55.    Upon approval and entry of this Decree by the Court, this Decree shall constitute a final judgment as to all claims of the Plaintiffs against all Defendants arising from the circumstances alleged in the Plaintiffs' Complaint and First Amended Complaint.

**XI.    GENERAL PROVISIONS**

56.    The terms of this Consent Decree apply to all federal, state, and local elections administered by the BOER.

57.    Whenever Defendants enter into an election services contract with any other entity, political subdivision, or political party to conduct an election on behalf of that entity, Defendants shall require that entity to agree to abide by the terms of this Consent Decree.

58.    This Consent Decree fully and finally resolves Plaintiffs' claims against all Defendants as alleged in the Complaint and First Amended Complaint filed by Plaintiffs in this lawsuit.

59.    The undersigned representatives of the parties certify that they are fully authorized to enter into the terms and conditions of this Decree, and to execute and legally bind the parties to this document.

60.    This Consent Decree is binding upon the parties, by and through their officials, agents, employees, and successors in office.

15

61.     This Consent Decree shall remain in effect for five (5) years from the date of this
Order. The five year term shall not include any periods of time when the Examiner or the Court
have determined that the Defendants have failed to comply with material terms of this Decree or
when Defendants have been found to have breached any of the material terms of this Decree.

Agreed to this 24ᵗʰ day of February 2017

For Plaintiffs:

William V. Custer
Georgia Bar No. 202910
Jennifer B. Dempsey
Georgia Bar No. 217536
Bryan Cave LLP
One Atlantic Center
Fourteenth Floor
1201 West Peachtree Street, NW
Atlanta, Georgia 30309-3488
Phone: (404) 572-6600
Fax:    (404) 572-6999
E-mail: bill.custer@bryancave.com
        jennifer.dempsey@bryancave.com


The Lawyers' Committee for Civil Rights Under Law
Ezra Rosenberg*
Julie M. Houk*
John Powers*
The Lawyers' Committee for Civil Rights Under Law
1401 New York Avenue NW, Suite 400
Washington, DC 20005
Phone: (202) 662-8600
Fax:    (202) 783-0857
Email:  erosenberg@lawyerscommittee.org
        jhouk@lawyerscommittee.org
        jpowers@lawyerscommittee.org

*Admitted pro hac vice

16

For Defendants:

O'Quinn & Cronin, LLC
Michael A. O'Quinn
Georgia Bar No. 553056
103 Keys Ferry Street
McDonough, Georgia 30253
Phone: (770) 898-0333
Fax: (770) 898-0330

Law Office of Andrea Grant, LLC
Andrea Grant
P.O. Box 60
504 Bowers Street
Royston, GA 30662
Phone: 706-245-9293
Fax:     706-245-0626
Email:  andreagna@bellsouth.net

**IT IS SO ORDERED, ADJUDGED AND DECREED:**

Dated: _____     _____

C. Ashley Royal
Judge of the United States District Court for the
Middle District of Georgia

17

## Appendix A – Voters previously restored to the registration list

Sierra Battle

Virginia Battle

Johnathan Clayton

Samuel Clayton

Tameshia Cobbs

Jarlessia Heath

Jimmy Johnson

Natasha D. Jones

Troy Latimore

Keith Leslie

Nelson Mitchell

Alice Scott

Moriah Speights

Sanquan Thomas

Johnny Thornton

Quintina Walker

Sherrod Williams

## Appendix B – Voters to remain on the inactive list

Danita Bates

Shanta Bly

Vendal Gilbert

Brian Glover

Brandon Littleton

Carl Lott, Jr.

Twaniqua Shivers

James Tucker

19



Appendix C – ~~Voters to be placed on the inactive list~~  See paragraph 38 & 9

Darrick Barnes

Maya Barnes

Crystal Brown

James Griffin

Frank Hamm

Thomas Harris III

Duane Jones

Alicia Jordan

Marvin Kendrick

Dorothy Leslie

Michael Primas

Sabrina Smith

Tiffany Smith

Brandon Thomas

20