IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| GEORGIA STATE CONFERENCE OF THE NAACP, as an organization, GEORGIA COALITION FOR THE PEOPLE'S AGENDGA, as an organization, SAQUAN THOMAS, MERRIT HUBERT, TAURUS HUBERT, JOHNNY THORNTON, MARTEE FLOURNOY, and LARRY WEBB, | : | |
| Plaintiffs, | : | |
| v. | : | CIVIL ACTION |
| | : | No. 5:15-CV-00414 (CAR) |
| HANCOCK COUNTY BOARD OF ELECTIONS AND REGISTRATION, KATHY RANSOM, NANCY STEPHENS, LINDA CLAYTON, ROBERT INGRAM, and JIM YOUMANS, in their official capacities as members of the Hancock County Board of Elections and Registration, and TIFFANY MEDLOCK, in her official capacity as the Hancock County Elections Supervisor, | : | |
| Defendants. | : | |

**Order on Joint Motion for Entry of Consent Order and Plaintiff's Motion for Attorneys' Fees**

Before the Court is the parties' Joint Motion for Entry of Consent Order [Doc. 67]

and Plaintiffs' Motion for Attorneys' Fees [Doc. 68]. For the reasons explained below,

1

the Court **GRANTS** both Motions [Doc. 67, 68] and awards fees in the amounts specified below.

## BACKGROUND

On November 3, 2015, Plaintiffs the Georgia State Conference of the NAACP, the Georgia Coalition for the Peoples' Agenda, Saquan Thomas, Merritt Hubert, Taurus Hubert, Johnny Thornton, Martee Flournoy and Larry Webb, filed suit against Defendants the Hancock County Board of Elections and Registrations ("BOER"), its members Kathy Ransom, Nancy Stephens, Linda Clayton, Robert Ingram, and Jim Youmans in their official capacities, and Tiffany Medlock in her official capacity as the Hancock County Elections Supervisor, alleging violations of the Fourteenth Amendment's Due Process Clause and Equal Protection Clause, the Civil Rights Act of 1964, the Voting Rights Act of 1965, and the National Voter Registration Act of 1993. Plaintiffs alleged Defendants were improperly challenging and removing registered voters from the Hancock County voter registration list in a racially motivated manner.

On January 21, 2016, after Plaintiffs filed a Motion to Expedite Discovery, the Court held a telephone conference and ordered Defendants to restore any eligible voters that had been removed to the registration rolls. After much discourse between the parties, investigation into the whereabouts of purged voters, and multiple telephone status conferences with the Court, all voters that could be identified as eligible to vote in

Hancock County were restored to the voter rolls before the March 1, 2016 primary election. The Court has held no less than 13 telephone conferences to resolve numerous issues in this case requiring Court intervention. After engaging in extensive discovery, the parties agreed to mediation, resolved the substantive issues, and submitted their negotiated settlement agreement to the Court on March 1, 2017.

## DISCUSSION

### I. Consent Decree

In the parties' proposed Consent Decree currently before the Court, the Defendants strenuously deny any racial discrimination or violations of state law but agree they will abide by the specific standards and procedures laid out in the Consent Decree. Specifically, Defendants agree to not engage in discriminatory challenges to voters' eligibility, to only process residency-based challenges if the challenge is premised on residency at time of initial voter registration, to follow particular procedures in processing inactive or relocated voters, and to strictly adhere to the formal and detailed procedures laid out in the Consent Decree for processing voter challenges.

Defendants agree they will provide notice of written challenges and information relating to such challenges to a designated member of Plaintiffs' counsel for five years following the entry of the Consent Decree. Defendants also agree to take no action

regarding certain listed voters restored to the voter registration rolls and to restore another group of listed voters. Both groups of voters will have two federal election cycles in which to vote or update their information before being subject to the National Voter Registration Act's list maintenance procedures.

In addition, the parties agree within 21 days after the entry of the Consent Decree they will attempt to choose an Examiner who will review the BOER's actions regarding list maintenance and voter challenges based on residency. If the parties cannot agree on an Examiner, they will suggest candidates to the Court, and one will be appointed. The Examiner may make recommendations to the BOER regarding its compliance with state law procedures and the procedures in the Consent Decree. If the BOER disagrees with or does not follow the recommendations any party may bring that issue to the Court's attention. The Examiner's term shall run for three and a half years from the date of appointment; however, upon Plaintiffs' motion and after Defendants are given an opportunity to respond, the Court may extend the Examiner's term.

Finally, the parties acknowledge Plaintiffs may be awarded attorneys' fees at the Court's discretion and agree Plaintiffs may seek reasonable fees and costs incurred on any motion to enforce the Consent Decree. The Court will retain jurisdiction over this case for the five years the Consent Decree will be in effect; however, this case will be administratively closed. The Court finds this agreement effectively resolves the merits

of Plaintiffs' claims. The parties' Consent Decree is hereby **GRANTED,** leaving only the issue of Plaintiffs' attorneys' fees to be determined.

## II. Attorneys' Fees

Under the "American Rule" courts generally do not award fees in a civil suit; however, under statutory fee shifting provisions, Congress has allowed for a "prevailing party" to seek an award of attorney's fees.[1] Plaintiffs seek attorneys' fees pursuant the National Voter Registration Act, 52 U.S.C. § 20510(c), which authorizes the Court to award the prevailing party reasonable attorney's fees, including litigation expenses and costs.[2]

In order to be a prevailing party for the purposes of a fee-shifting statute, there must be a court-ordered "material alteration of the legal relationship of the parties."[3] In other words, if Plaintiff has succeeded on "any significant issue…which achieved some of the benefit the parties sought in bringing the suit," they are considered the "prevailing party."[4] However, finding that the Plaintiff is a prevailing party is merely a "statutory threshold."[5] After the court makes this finding, it is then tasked with determining what constitutes a "reasonable" fee.[6]

---

[1] *Smalbein ex rel Estate of Smalbein v. City of Daytona Beach*, 353 F. 3d 901, 904 (11th Cir. 2003).
[2] 52 U.S.C. § 20510(c).
[3] *Buckhannon Board & Care Home, Inc., W. Va. Dept. of Health & Human Res.* 532 U.S. 598, 604 (2001).
[4] *Smalbein*, 353 F. 3d at 907 (citations omitted).
[5] *Hensley v. Eckhart*, 461 U.S. 424, 433, (1983).
[6] *Id*.

Defendants do not contest Plaintiffs' status as the prevailing party. Indeed, the United States Supreme Court has held "settlement agreements enforced through a consent decree may serve as the basis for an award of attorney's fees. Although a consent decree does not always include an admission of liability by the defendant, it nonetheless is a court-ordered chang[e][in] the legal relationship between [the plaintiff] and the defendant."[7] Accordingly, the Court finds Plaintiffs are the prevailing party and thus meets the threshold requirement for receiving attorneys' fees. The Court now turns its discussion to the "reasonableness" of Plaintiffs' request for attorneys' fees.

### A. The Lodestar Calculation

A reasonable attorneys' fee award is properly calculated under the "lodestar" approach by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.[8] In making this calculation, the court should exclude hours that are "excessive, redundant, or otherwise unnecessary," and thus not "reasonably expended."[9] A reasonable fee is one "that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case," and "the lodestar method yields a fee that is presumptively sufficient to achieve this objective."[10]

---

[7] *Buckhannon*, 532 U.S. at 604 (alteration in original) (internal citations and quotations omitted).
[8] *American Civil Liberties Union of Georgia v. Barnes*, 168 F. 3d 423, 427 (11th Cir. 1999) (*citing Blum v. Stenson*, 465 U.S. 886, 888 (1984)).
[9] *Hensley*, 461 U.S. at 434.
[10] *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010).

Plaintiff, as the fee applicant, bears the burden of establishing the reasonableness of its fees.[11]

Although the lodestar calculated fee is presumptively reasonable and presumptively includes all the following factors, the court may consider the following in terms of their influence on the lodestar amount:[12] (1) the time and labor required; (2) the novelty and difficulty of the legal questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the expertise, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.[13]

Ultimately, the trial court has the discretion to determine reasonable attorneys' fees: "The court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to

---

[11] *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).

[12] *Norman*, 836 F.2d at 1299.

[13] *Johnson v. Ga. Hwy. Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974), *abrogated in part on other grounds*, *Blanchard v. Bergeron*, 489 U.S. 87 (1989); *see also Cable/Home Comm. Corp. v. Network Prod., Inc.*, 902 F.2d 829, 853 (11th Cir. 1990).

7

value."[14]  In the present case, Plaintiffs are requesting the amount of $560,981.93. Having exhaustively reviewed Plaintiffs' time entries, and considered the parties' briefs, the various factors listed above, as well as its own knowledge and experience, the Court finds Plaintiffs' request for fees to be mostly reasonable except for the issues described and cut accordingly below.

### 1. *Reasonable Hourly Rate*

A reasonable hourly rate is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."[15] The relevant legal market is generally the place where the case is filed.[16] The prevailing party "bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates."[17]

Here, Plaintiffs request $560,981.93. This amount is comprised of $57,150.43 in litigation expenses and $503,831.50 in attorneys' fees for 2,374.4 hours spent on this case. The total hours presented to the Court represent the work of eleven legal professionals—ten attorneys and one paralegal—and one social scientist. Plaintiffs request the following hourly rates for the Bryan Cave attorneys: William V. Custer, Partner, $350; Jennifer B. Dempsey, Partner, $300; Julia F. Ost, Senior Associate, $200;

---

[14] *See Norman*, 836 F.2d at 1303 (citations omitted).
[15] *American Civil Liberties*, 168 F.3d at 436 (quoting *Norman,* 836 F.2d at 1299).
[16] *See Cullens v. Ga. Dep't of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994).
[17] *Norman*, 836 F. 2d at 1299.

8

Danielle Parrington, Senior Associate, $200; Christian Bromley, Junior Associate, $175; and Stephanie Roberts, Paralegal, $100.

Plaintiffs seek the following hourly rates for the attorneys employed by the Lawyers' Committee for Civil Rights: Ezra D. Rosenberg, Co-Director of the Voting Rights Project, $350; Robert Kengle, former Co-Director of the Voting Rights Project, $350; Julie Houk, Senior Special Counsel, $300; John Powers, Associate Counsel, $200; Pam Disney, Law Fellow, $175; Megan Gall, Social Scientist, $200 and Madelyn Finucane, Legal Assistant, $100.

This case was filed in Macon, Georgia in the Middle District of Georgia, and the events giving rise to this litigation occurred in Hancock County. The Court finds that Macon is the appropriate legal community for the purpose of determining reasonable hourly rates. Plaintiffs' attorneys are located in Atlanta, Georgia and in Washington, D.C., but Plaintiffs cite to multiple cases from the Middle District of Georgia to show their hourly rates are reasonable.

Defendants only contest the $200 hourly rate for John Powers of the Lawyers' Committee citing his lack of legal experience, as he graduated from law school in 2013, and this case was filed in 2015. Plaintiffs argue John Powers deserves a $200 hourly rate due to his experience working at the Justice Department and his familiarity with voting rights issues. However, Mr. Powers had only been licensed to practice law for two years

prior to the start of this litigation.[18] In the Court's experience, a reasonable hourly rate for a two-year associate in the Middle District of Georgia is $150. The hourly rate of Mr. Powers is therefore reduced to $150.

Similarly, the $175 hourly rate requested for Pam Disney and Christian Bromley, both of whom graduated and were admitted to practice in 2013, must be reduced to $150. Additionally, as Plaintiffs have provided no evidence of what the reasonable prevailing market rate of a "social scientist" is, the Court must conclude the hourly rate of Megan Gall, who received her PhD in 2013, should also be reduced to $150.

The Court finds the rest of the requested hourly rates are the prevailing market rates of attorneys with comparable skills, experience, and reputation in the Middle District of Georgia and are therefore reasonable.

### 2. *Reasonable Hours Expended*

In determining reasonable attorneys' fees, district courts "are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded."[19] To do this, the court should exclude hours that are "excessive, redundant,

---

[18] The Court has no doubt Mr. Powers was a great asset to his team and has significant familiarity with voting rights issues. However, Mr. Powers was tasked with doing fundamental legal research such as: "determining possible causes of action;" looking for "NVRA cases in the Eleventh Circuit and nationally;" and determining "whether the Hancock County Board of Elections and Registration were proper defendants." Pls.' Motion for Attorneys' Fees, Ex. B, Ex. 1, [Doc. 68-3, at p.2, 4]. These are tasks appropriately given to a second-year attorney.
[19] *American Civil Liberties Union*, 168 F.3d at 428.

10

or otherwise unnecessary," and thus not "reasonably expended."[20] The following is a breakdown of how Plaintiffs' attorneys delineated their time:

- Pre-suit Investigation and Complaint: 429.8 hours, $104,455.00.
-  Factual Investigation: 818.4 hours, $168,180.00.
-  Preparation of Filings: 112.6 hours, $30,662.50.
- Hearings: 47.5 hours, $14,355.00.
- Discovery: 583.15 hours, $141,865.00.
- Meditation and Settlement: 246.95 hours, $71,375.00.
- Recovery of Attorneys' Fees and Expenses: 92.3 hours, S24,130.00.
- Administrative Tasks: 35.4 hours, $4,790.00.

Except for the issues described below, the Court finds Plaintiffs' hours to be reasonable given the length, magnitude, and complexity of this case.

Defendants argue Plaintiffs' fees should be reduced by $9,560 "off the top" for the time Plaintiffs spent working on their Motion to Expedite Discovery, and, after the Court denied the Motion to Expedite Discovery as premature, a Motion for Reconsideration which the Court eventually found to be moot. Similarly, Defendants argue Plaintiffs' fees should be reduced by $25,150 for hours spent on a preliminary injunction Plaintiffs never filed. Defendants characterize these motions as unsuccessful and analogize them to an unsuccessful claim for which attorneys' fees should not be requested. The Court, however, is unpersuaded.

The Court only found the Motion for Reconsideration to be moot after months of Court-held status conferences to ensure Defendants' compliance with the Court's

---

[20] *Hensley*, 461 U.S. at 434.

January 21, 2015 Order directing Defendants to provide Plaintiffs with all records and put purged voters back on the rolls. All eligible voters who could be located were restored to the voter rolls in time to vote in the March 1, 2016 election. Thus, much of Plaintiffs' reasons for filing their Motion to Expedite Discovery and for which they prepared the preliminary injunction had been resolved. Additionally, Plaintiffs were successful in obtaining injunctive relief in the Consent Decree. Therefore, the Court finds the hours spent on these motions to be reasonable, as they contributed to Plaintiffs' ultimate success. Thus, the Court will not deduct the amount suggested.

Having carefully reviewed Plaintiffs' attorneys' time entries, the Court finds Plaintiffs generally exercised suitable billing judgment and their requested hours are mostly reasonable and not excessive. As Plaintiffs point out, the majority of the work in this case was performed by only three attorneys. Those three attorneys, together with one paralegal, performed 1,937.7 out of the 2,374 hours claimed in this case. The Lawyers' Committee "no charged" a significant portion of their time entries, recognizing time they may have spent on tasks which were excessive, duplicative, inefficient, not directly related to the case, or insufficiently detailed. The Lawyers' Committee seeks payment for 1,619.3 hours out of the 2,374.4 total requested hours. William Custer of Bryan Cave similarly avers he cut hours for the same reasons,

although these cuts are not shown in the time entries. Both groups of attorneys deducted an additional 10%.

Defendants argue Plaintiffs' reductions are not enough. Defendants contend Plaintiffs had an excessive number of attorneys for what Defendants argue is a four-lawyer case. Defendants point to this Court's decision in *Prison Legal News*, where the Court reduced the plaintiffs' attorneys' hours by 50% for unnecessarily having eight attorneys.[21] The Court, is of course, familiar with its reasoning in *Prison Legal News* and finds this case to be easily distinguishable.

*Prison Legal News* was a "relatively straightforward challenge on First and Fourteenth Amendment grounds to a jail's mail policies—a factual and legal scenario that [p]laintiff ha[d] been litigating nationwide and one with which [p]laintiff's seasoned attorneys were very familiar." [22] Here, unlike *Prison Legal News*, the Court immediately recognized this case to be complicated and complex—legally and especially factually—which is why the Court involved itself so early in the case and held no less than 13 telephone conferences throughout the litigation process.

Additionally, although the Court recognizes the Lawyers' Committee specializes in voting rights issues, Defendants presents no evidence the Lawyers' Committee has

---

[21] *See generally Prison Legal News v. Chapman*, No. 3:12-CV-00125 (CAR), 2015 WL 5722797 (M.D. Ga. Sept. 29, 2015).
[22] *Prison Legal News*, 2015 WL 5722797, at *3.

litigated this same exact legal scenario, or copied large parts of the complaint from another law suit.[23] Indeed, the Lawyers' Committee could not have previously litigated the same factual scenario, as the people involved in this litigation are specific to Hancock County, Georgia, and this case required extensive factual investigation to locate the people affected, determine their voting eligibility, and restore them to the voter rolls.

Finally, during the course of the litigation in *Prison Legal News*, the Court "expressed its incredulity over [p]laintiff's need for so many attorneys on this case," informed "[p]laintiff that the nature and complexity of the claims at issue [did] not justify such an excess of attorneys on the case," and "instructed [p]laintiff that two attorneys would be more than sufficient." After this admonishment, the plaintiff in that case removed one attorney and added two more. Additionally, the Court noted the defendants in *Prison Legal News* employed one attorney throughout the litigation.

An excessive and unnecessary number of attorneys are not present here. When Plaintiffs filed this case, the Court recognized the complexities of both the legal and factual issues presented. The Court did not admonish Plaintiffs for their number of attorneys. Additionally, Defendants never had less than two attorneys attend the thirteen telephone conferences, and at seven of the thirteen conferences Defendants had

---

[23] In *American Civil Liberties Union*, the Eleventh Circuit found the hours claimed for drafting the complaint to be excessive, as the complaint was largely derived from other sources. 168 F.3d at 431.

three attorneys present. This is in stark contrast to the number attorneys on each side in *Prison Legal News*, and a testament to the complex nature of this case.

Additionally, having multiple lawyers on a case is not "inherently unreasonable,"[24] and Defendants point to only five instances out of 23 months of daily time entries they argue are redundant. Defendants first point to the November 2, 2015 time entry showing six attorneys—Custer, Dempsey, Houk, Powers, Rosenberg, and Disney—billed time for reviewing the Complaint. However, in the time records provided to the Court, the 5.2 hours John Powers spent incorporating edits into the Complaint, and the 2 hours Pam Disney spent reviewing the Complaint and its cited case law, were not charged.[25] Plaintiffs' attorneys spent approximately 104.1 hours working on the Complaint, not including the time of the paralegals, and deducted 46 of those hours as a no charge. The Court finds 58.1 hours spent on a 50-page (excluding exhibits), 236-paragraph Complaint, with extremely specific factual allegations and a detailed racial history of Hancock County to be reasonable.

Second, Defendants assert it was redundant for Custer, Disney, Powers, and Houk to all spend time reviewing Defendants' Answer on December 9, 2015. However, both Disney's and Power's time regarding the Answer has been deducted as a no

---

[24] *American Civil Liberties*, 168 F. 3d, at 432.
[25] Pls.' Motion for Attorneys' Fees, Ex. B, Ex. 1, [Doc. 68-3, at p. 9-10].

charge.[26] Similarly, Defendants argue four lawyers billing on February 8, 2016, for preparation for a status conference with the Court is excessive. However, both Powers' and Houk's time was deducted as a no charge.[27]

Fourth, Defendants assert it was unreasonable for four attorneys to prepare and attend a status telephone conference with the Court on February 16, 2016. Again, John Powers' time preparing for, attending, and post-briefing the status conference has been deducted as a no charge. In fact, John Powers' time has been deducted for 11 out of the 13 telephone conferences with the Court.[28] The Court has meticulously combed the record and the time entries filed. None of the 12 conferences for which Plaintiffs submitted full records had more than three attorneys billing time; for six conferences only two attorneys billed time; and for one conference only John Powers attended.

However, the Court agrees it was unnecessary and excessive for three senior attorneys to be billing time at $300-$350 an hour for these telephone conferences. In fact, 10 out of 34 total time entries claimed for Jennifer Dempsey in this case were either for telephone conferences with co-counsel, for which William Custer or Julie Houk (or both) also billed, or for telephone conferences with the Court, for which William Custer or Julie Houk (or both) also billed. The Court understands the need to keep senior

---

[26] *Id.* at p. 23.
[27] *Id.* at p. 29.
[28] For one conference the Court is missing the time entries for that week. Lawyers' Committee seems to have omitted a week from their time entries. Page 31 ends on 1/15/16 and page 32 begins on 2/2/16. Pls.' Motion for Attorneys' Fees, Ex. B, Ex. 1, [Doc. 68-3, at p. 30-31].

attorneys informed as to the progress of the litigation. However, it is redundant and unreasonable to bill for three senior attorneys for the same activity, and it is especially unreasonable because Ms. Dempsey did not address the Court or opposing counsel at the majority, if not all, of the status conferences. This time must be deducted.

Lastly, Defendants argue it was excessive for Custer, Dempsey, and Powers to bill time for attending at the 30(b)(6) deposition of Defendant Tiffany Medlock on June 28, 2016. Plaintiffs contend since this was the most important deposition they took, and for the other five depositions they had only one or two attorneys bill time, it was reasonable for three of Plaintiffs' attorneys to bill time for this one deposition. The Court finds two attorneys would have been sufficient, and therefore the Court will deduct William Custer's time.

Additionally, Plaintiffs seek $24,130.00 for 92.3 hours spent recovering attorneys' fees for this case. Although there is nothing inherently excessive about a request for fees associated with filing attorneys' fees,[29] the Court finds this amount of time to be excessive.[30] Some of this time may have been spent negotiating the issue of fees with

---

[29] *Johnson v. State of Miss.*, 606 F.2d 635, 638 (5th Cir. 1979). In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[30] In *Prison Legal News*, the Court found 35.78 hours working on fee recovery to be excessive. The fee request evidences patently excessive expenditures of time throughout the litigation. 2015 WL 5722797, at *5. In *Loranger v. Stierheim*, the Eleventh Circuit noted seeking compensation for over 100 hours for preparing an initial fee request to be "patently excessive." 10 F.3d 776, 782–83 (11th Cir. 1994).

Defendants; however Plaintiffs' counsel avers their time records were kept in the ordinary course of business, so no substantial time would have been required to compile those records. Additionally, the legal issues associated with a request for attorneys' fees are neither novel nor complicated. The Court recognizes counsel had to use billing judgment and deduct time from their records; however, in the Court's experience this would not take more than a few days. The Court will reduce this $24,130 by 50%, and award $12,065.

Except for the issues described above, the Court finds Plaintiffs' attorneys' hours to be reasonable. Defendants do not contest Plaintiffs' litigation expenses, and, having carefully reviewed the records and receipts attached to Plaintiffs' affidavits, the Court finds these expenses are legitimate and reasonable and awards them to Plaintiffs in full.

Therefore, below are the hours and rates the Court will award each person.

| Attorney | Hourly Rate Awarded | Hours Awarded (claimed hours –hours deducted) | Total Fee |
|---|---|---|---|
| William Custer | $350 | 258- 4(for redundant deposition)= 254 | $88,900.00 |
| Ezra Rosenberg | $350 | 43 | $15,050.00 |
| Robert Kengle | $350 | 3 | $1,050.00 |
| Jennifer Dempsey | $300 | 77- 9.7(for redundant telephone conferences)= 67.3 | $20,190.00 |
| Julie Houk | $300 | 654.5 | $196,350.00 |

| | | | |
|---|---|---|---|
| Julia Ost | $200 | 76.6 | $15,320.00 |
| Danielle Parrington | $200 | 38.40 | $7,680.00 |
| Christian Bromley | $150 | 28 | $4,200.00 |
| John Powers | $150 | 756.5 | $113,475.00 |
| Megan Gall | $150 | 10.5 | $1,575.00 |
| Pam Disney | $150 | 141.5 | $21,225.00 |
| Stephanie Roberts (paralegal) | $100 | 268.70 | $26,870.00 |
| Madelyn Finucane (legal assistant) | $100 | 10.3 | $1,030.00 |
| Total: | | | $512,915.00 |
| Subtracting:<br>• $12,065 (for Excessive time spent on Attorneys' Fees Recovery)<br>• $16,817 (10% of Bryan Cave's Original Fee Amount)<br>• $39, 164 (10% of Lawyers' Committee's Original Fee Amount) | | | |
| **FINAL TOTAL** | | | **$444,869.00** |

## CONCLUSION

In light of the foregoing, the Court **GRANTS** the parties' Joint Motion for Entry of Consent Order [Doc. 67] and Plaintiffs' Motion for Attorneys' Fees [Doc. 68]. The Court **HEREBY ORDERS** Defendants to pay Plaintiffs **$444,869.00** in attorneys' fees and **$57,150.43** in expenses. The Clerk is **DIRECTED** to administratively close this case. However, the Court will retain jurisdiction for the five years the Consent Decree is in effect.

**SO ORDERED,** this 30th day of March, 2018.

S/ C. Ashley Royal
C. ASHLEY ROYAL, SENIOR JUDGE
UNITED STATES DISTRICT COURT
